IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CASE NO.:

| | |
|---|---|
| WAKE COUNTY BOARD OF EDUCATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **COMPLAINT** |
| | ) |
| L.M., a minor, by and through his parents, Jeremy Mynhier and Adrianna Mynhier, | ) ) ) |
| Defendants. | ) ) |

## I. INTRODUCTION

1. This is an action seeking relief from the Administrative Law Judge's ("ALJ") decision finding in the Defendants' (previously, "Petitioners") favor in the underlying administrative hearing, in which the ALJ made numerous errors of fact and law, including but not limited to misplacing the burden of proof, misstating or misunderstanding key evidence, disregarding appropriate deference to professional educators, and ordering an astronomical compensatory education award based on multiple errors of law and fact.

2. This case arises under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and parallel state law, Chapter 115C, Article 9. The Wake County Board of Education ("Board") brings this action to challenge certain portions of the decision that the ALJ rendered in the administrative proceedings conducted in this matter under 20 U.S.C. § 1415(g)(2).

3. The Board challenges each and all of the ALJ's determination of issues in favor of Defendants, including that it did not offer a free appropriate public education to L.M. from

August 2021 to February 2023 by failing to develop and/or implement appropriate Individual Education Programs ("IEPs") and Behavior Intervention Plans ("BIPs"), as well as the ALJ's determination that Defendants are entitled to compensatory education in the areas of counseling, parent training, academic recovery, and social, emotional and behavioral skills. The Board also specifically contests the ALJ's determination that North Carolina's one-year statute of limitations for IDEA claims allowed Defendants to pursue claims arising prior to November 2021. Additionally, the Board contests the ALJ's decision as to findings made by the ALJ that were not based on the evidence in the record. Finally, the Board contests the ALJ's decision to award remedies beyond what the IDEA contemplates, including compensatory education for missed lunch periods and general education classes missed for the provision of special education services.

4. The Board brings this action as an aggrieved party seeking review by this Court pursuant to 20 U.S.C. § 1415(i)(2)(A).

## II. JURISDICTION & VENUE

5. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(A).

6. All appropriate administrative remedies have been exhausted with respect to the issues presented by the Board. A local due process hearing was conducted by an Administrative Law Judge over six (6) non-consecutive days beginning May 22, 2023 and ending on May 31, 2023. The Administrative Law Judge rendered her final decision on September 20, 2023.

7. Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2).

## III. THE PARTIES

8. Plaintiff is the Wake County Board of Education ("Board"), a body corporate, organized and operating under the General Statutes of North Carolina. The Board is a Local Educational Agency under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, responsible under federal and state laws for provision of a free appropriate public education to students with disabilities.

9. Defendant L.M. is an IDEA-eligible student who lives in Wake County. L.M. is, and at all relevant times was, a citizen and resident of North Carolina.

10. Defendants J.M. and A.M. are L.M.'s biological parents. J.M. and A.M. are, and at all relevant times were, citizens and residents of North Carolina. L.M., J.M. and A.M. will be collectively referred to as "Defendants" in this Complaint.

## IV. PROCEDURAL BACKGROUND

11. On November 14, 2022, Defendants filed a Petition for Contested Case Hearing against the Board, alleging various violations of the IDEA.

12. After an attempt at mediation was unsuccessful on December 2, 2022, an Amended Scheduling Order was issued January 17, 2023, setting hearing for May 22-26, 2023, or until completion.

13. On April 5 and 6, 2023, both parties filed Proposed Statement of Issues for hearing.

14. On April 14, 2023, the Board filed a motion for summary judgment regarding the one-year statute of limitations for IDEA claims in North Carolina, as well as for claims not identified by Defendants in their Amended Proposed Statement of Issues filed April 11, 2023.

15. On May 4, 2023, and while the Board's summary judgment motion was still pending, Defendants filed a second Petition for Contested Case Hearing against the Board for

2

Case 5:23-cv-00716-D-KS   Document 1   Filed 12/13/23   Page 3 of 15

reimbursement of private school tuition and moved to consolidate the two (2) Petitions. The Petitions were consolidated on May 16, 2023.

16. On May 16, 2023, Plaintiff's motion for summary judgment was granted as to the claims regarding appropriateness (hereafter "FAPE issues") of the Individual Education Plans ("IEPs") and Behavior Intervention Plans ("BIPS") developed prior to November 11, 2021, but denied for all other claims, including implementation claims related to events prior to November 11, 2021.

17. On May 17, 2023, Plaintiff filed a motion *in limine* seeking to exclude certain expert witness testimony and an expert report disclosed outside the deadline for disclosure set by the North Carolina Rules of Civil Procedure.

18. A written order was issued June 2, 2023 granting Plaintiff's motion *in limine* with respect to the expert report, but denying the request to exclude expert witness testimony, including testimony of the expert producing the late report.

19. A hearing on the merits took place over six (6) non-consecutive days beginning May 22, 2023, and ending May 31, 2023.

20. At the close of Defendants' case in chief, Plaintiff orally moved pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(b) to dismiss some claims, including those related to occupational therapy as a related service and to L.M.'s handwriting needs.

21. On May 30, 2023, Plaintiff's Rule 41(b) Motion was granted as to claims related to occupational therapy and handwriting needs, but the ALJ declined to render judgment on the remainder of the Motion and therefore, denied the remaining aspects of the motion.

22. Prior to the filing of the Proposed Final Decisions on the FAPE issues, after reviewing the admitted evidence and transcripts, the ALJ requested additional stipulations

regarding L.M.'s class schedule for seventh and eighth grades, track-out periods, and the meaning of the word "present" in Plaintiff's Exhibit 13. These stipulations were filed on July 24, 2023.

23. On July 28, 2023, a conference call was held, at the request of the ALJ, to discuss Plaintiff's request that the tribunal take Official Notice of certain facts in its proposed final decision. The request to take Official Notice was denied by the ALJ on September 2, 2023.

24. On July 31, 2023, the ALJ ordered the parties to stipulate to "the dates that data and/or sign in sheets were not maintained during both the 2021-22 and 2022-2023 school years about L.M.'s attendance in the BST classroom whether for 'Social Skills Instruction' or when he should have been in his general education classes or in the lunchroom with his nondisabled peers."

25. On August 8, 2023, the ALJ requested confirmation of specific information contained in the record, including taking Official Notice of the COVID-19 Pandemic and the dates of in-person learning.

26. On August 9, 2023, Plaintiff filed its response to the July 31 order, objecting to the ALJ's ordering the parties to stipulate to certain facts, and submitting that the documentation and testimony in the record represented all that was entered at the hearing on the issues and that any explanation for the absence of further documentation fell outside the record in the contested case.

27. On August 15, 2023, despite having already closed their case in chief in the FAPE case, Defendants filed Notice of Voluntary Dismissal Without Prejudice for their tuition reimbursement claim. Subsequently, the ALJ cancelled the hearing scheduled for the tuition reimbursement claim on August 21-24, 2023.

28. The ALJ entered her final decision on September 20, 2023. Among other things, the ALJ found that the one-year statute of limitations did not bar Defendants from pursuing claims regarding IEP implementation dating back to August 2, 2021. The ALJ found that the Board had failed to provide L.M. with a free appropriate public education ("FAPE") in several areas and awarded 402 hours and 30 minutes of compensatory services as a remedy.

29. The Board, having been aggrieved by the decision of the ALJ, now files this civil action seeking relief from the ALJ's decision that exceptions to the statute of limitations were established, that the Board denied L.M. a FAPE, that L.M.'s IEPs and BIPs were inappropriate and that the Board failed to appropriately implement the IEPs and BIPs, and that L.M. is entitled to compensatory education services for time missed in the general education setting, including lunch.

V. FACTS

*Background*

30. During the contested time periods presented in the original Petition for Contested Case Hearing, L.M. was a student in the Wake County Public School System. He was enrolled at Rolesville Middle School for the 2020-21, 2021-22, and part of the 2022-23 school years.

31. L.M. was withdrawn from the Wake County Public School System on February 7, 2023. Upon information and belief, he has since attended Fusion Academy, a private program offering almost exclusively one-on-one online education/tutoring services.

32. L.M. is an intelligent young man who has struggled historically with emotional regulation and aggressive responses to stimuli when dysregulated. He has also shown some work completion / task avoidance concerns, which increased during his 8th grade school year. His intellectual profile is generally average to above-average, except that he has an unexpectedly low

"processing speed," the rate at which his brain is able to absorb, analyze, and respond to information or situations.

33. During his 7th and 8th grade years, due to his aggressive verbal and physical behaviors interfering with his participation in the general education program, L.M. was a student on the caseload of the Behavior Support Program, receiving certain services in the Behavior Support Teacher (BST) classroom.

34. Within each BST classroom, the behavior support teacher provides direct and indirect instruction and support to students with social, behavioral, and/or emotional deficits to help them access their educational programming.

35. In addition to the direct instruction in social and emotional skills that L.M. received, one of the strategies that the BST program teaches and supports is called the "self time-out" in which a student is taught, practices, and then implements a procedure in which they recognize their own dysregulation (due to anxiety, anger, fear, etc.) and remove themselves from the stressful situation by going to the BST classroom and seeking direct support from the BST teacher in re-regulating their emotions before returning to class.

36. Under various IEPs in the relevant time period, L.M.'s individualized goals and services called for social-emotional instruction, including social skills, which he received on a daily basis in the BST classroom. The IEP team recognized that L.M.'s inability to regulate his emotions was causing him to lose the benefits of instruction in the general education classroom, as well as leading to behavioral outbursts that caused him to receive disciplinary consequences, including suspensions. He also had a Behavior Intervention Plan that provided various accommodations and interventions to support him before and during times when his behavior escalated due to dysregulation.

37. These IEPs and BIPs were reviewed more often than required by law. L.M. had IEP meetings to address either the IEP, the BIP, or both on the following dates during or just prior to the relevant period: September 21, 2021; October 28, 2021; June 2, 2022; June 27, 2022; November 2, 2022; January 19, 2023; February 2, 2023. Although reevaluations are only required every three years, L.M. underwent a functional behavioral assessment in September 2021 and again in December 2022 (and the latter would have been completed months earlier but for delays by Defendants).

38. The goal of the BST program was to help him learn strategies to remain emotionally regulated in class, but an interim step on that path was learning first to remove himself from stressful situations in order to learn to apply those strategies.

39. L.M. received his social skills instruction in a small group setting with other students with similar needs. Lessons in that classroom covered a wide variety of social and emotional skills that would support all of the students present, and were tailored as appropriate to the specific individualized concerns of a particular student. Activities included teacher modeling, student role playing, group discussion, individual practice, and more. L.M. benefitted from this instruction and testified at the hearing about specific lessons he recalled.

40. L.M.'s IEPs and BIPs were designed to meet his individual needs and were based on the experience and assessment of school staff. His goals targeted known needs that, if successfully addressed, would help him benefit from his general education instruction more fully. His IEP accommodations modified certain aspects of the school program for him to support areas of need and remove barriers that his disabilities might create for him. His service delivery was specific and targeted in both frequency and duration to provide the needed special

education instruction while not removing him from the general education environment more than necessary.

41. Overall, his IEPs were appropriate to support his special education needs and his access to the general education environment and curriculum, and he made progress on his IEP goals over the course of 7th and 8th grade.

42. While there were staffing issues at Rolesville Middle School that led to transitions from one special education teacher to another for L.M. in 7th grade, he received his IEP services and accommodations consistently and the staff substantially complied with the IEP and BIP.

43. L.M. learned to and did use his "self time-out" strategy effectively. The BST classroom maintained a sign-in sheet for times when he left his general education class to access the BST classroom.

44. Based on the sign-in sheets and other evidence in the record, L.M.'s accessing the BST classroom caused him to miss only approximately 5-7% of his core general education instructional time (math, language arts, science, and social studies) in the 2021-22 and 2022-23 school years, which amounts to less than 75 hours over a year and a half. Importantly, those visits to the BST classroom allowed him to stay emotionally regulated and therefore participate more effectively in his general education classes.

45. L.M.'s grades were generally average, and while they dipped slightly in 8th grade, there is no evidence to suggest that this was due to a general lack of understanding or a failure of instruction. His work avoidance behaviors accelerated early in 8th grade, which led to the lower grades, and the IEP team met and developed a new behavior plan in response in the middle of his 8th grade year. This was an appropriate and timely response to a change in L.M.'s primary behavioral difficulties.

9

46. The most common time that L.M. was removed from the general education environment was during the lunch period, which he consistently elected to spend in the BST classroom to avoid the noise and chaos of the cafeteria. This was voluntary for L.M., and staff worked to help him attend lunch in the cafeteria, but he resisted due to the overstimulation that it caused for him. He was often permitted to bring a friend to the BST classroom for lunch.

47. L.M.'s parents had raised concerns as early as an October 28, 2021 IEP meeting about how often L.M. was being removed from class, and how the IEP and BIP were being implemented. These concerns were written into the IEP documentation from the meeting as presented by the parents. There in no question that J.M. and A.M. were aware, no later than October 28, 2021, of the concerns they later brought in their Petition for Contested Case Hearing. As such, the one-year statute of limitations began to run no later than October 28, 2021.

48. Defendants did not file the underlying Petition for Contested Case Hearing until November 12, 2022. Therefore, the only issues available to them under the one-year statute of limitations for IDEA claims in North Carolina were those arising after November 12, 2021. Any claims for allegedly missed or inappropriate services prior to November 12, 2021 should have been outside the reach of the Contested Case Hearing.

49. Given the social emotional instruction L.M. was receiving in his social skills class every morning, there was no evidence presented that L.M.'s social emotional needs required the support of a school counselor as well. Counseling as a related service would have addressed very similar goals and activities as those already present in the BST social skills class.

50. There was no evidence presented that L.M.'s parents required training on how to meet L.M.'s needs such that he would be better able to access his education. Their participation in IEP meetings showed that they understood the issues and simply had a different opinion about

10

Case 5:23-cv-00716-D-KS    Document 1    Filed 12/13/23    Page 10 of 15

certain interventions than school staff. The purpose of parent training is to equip them to support the child's receipt of special education services when they are otherwise not capable of doing so. That was not the case here.

*Administrative Proceedings*

51. On November 14, 2022, Defendants filed a petition for a contested case hearing in the North Carolina Office of Administrative Hearings, claiming among other things that WCPSS had denied L.M. a FAPE by allowing excessive removals from the general education classroom as part of his behavioral intervention plan.

52. The hearing took place across six (6) non-consecutive days between May 22 and May 31, 2023. Prior to the hearing, the ALJ partially denied the Board's motion for summary judgment seeking to limit the relevant time period to the IDEA's one-year statute of limitations, and allowed IEP implementation claims arising prior to November 11, 2021 to proceed.

53. The ALJ's final decision found for Defendants on numerous issues. The decision was significantly and negatively impacted by numerous legal and factual errors, irregular findings, and unsupported conclusions. By way of example and not limitation:

   a. The ALJ erred in denying the Board's summary judgment motion with respect to the statute of limitations on implementation claims. Because the parents were generally aware of their implementation concerns prior to November 11, 2021, any claims arising prior to that date should have been dismissed.

   b. The ALJ erred by considering and ruling on aspects of the case that were not raised in either the initial Petition or the Amended Petition, and held the district to have violated the law simply by deviating from some of its internal guiding documents for staff (which go beyond what the law actually requires).

c. The ALJ erred in allowing an expert witness whose report was excluded as untimely disclosed to testify to the very same content of her report, just without the report itself, during the hearing. The ALJ then relied repeatedly on this testimony in her Final Decision.

d. The ALJ erred by repeatedly placing the burden of proof on the Board rather than the Defendants, contrary to the law. The ALJ repeatedly made assumptions regarding evidence that was not presented at the hearing, ordered the parties to stipulate after the close of evidence to information that was not presented by Defendants at hearing, and used the lack of evidence on certain points against the Board instead of the Defendant-Petitioners (the party bearing the burden of production).

e. The ALJ erred by ordering a truly astonishing compensatory award of over 400 hours (roughly the equivalent of one-third of an entire school year) based on claims from less than a year and a half of school attendance.

f. The ALJ erred by ordering compensatory relief for every minute of general education instruction missed (implicitly finding that the self time-out strategy was *never* appropriate for L.M.) and even for *lunch* time spent in the BST classroom, which L.M. often did with regular education peers (benefiting rather than harming his social skill development).

g. The ALJ erred in finding the social skills instruction provided to L.M. inappropriate simply because it was delivered in a group setting—by its nature, social skills instruction often requires group work and shared practice opportunities among peers with similar needs. The ALJ compounded this error

by ordering compensatory services for every minute of social skills instruction L.M. received, implicitly finding that he received literally no benefit from the group social skills instruction despite L.M. testifying during the hearing about skills he learned and practiced in that class.

    h. The ALJ erred in finding L.M.'s IEP goals, accommodations, and service delivery inappropriate, as well as finding that L.M. required counseling as a related service and that L.M.'s parents required parent training in order for L.M. to make progress on his goals.

    i. The ALJ erred in additional ways, both procedural and substantive, to be further shown in later briefing in this case, including but not limited to failing to give appropriate deference to educators regarding matters of professional judgment.

54. The ALJ's decision is based on findings that are irregularly made, unsupported by the evidence in the record, and legally incorrect.

## VI. CLAIM FOR RELIEF

55. The Board seeks relief from the Administrative Law Judge's decisions in favor of Defendants, specifically but not limited to her decision that certain IEPs and BIPs were inappropriate; that the statute of limitations allowed claims prior to November 11, 2021; and that L.M.'s IEPs and BIPs were not substantially implemented. The Board seeks relief from the unreasonable and unsupported compensatory education award included in that decision.

56. The Board established at the hearing before the ALJ (even though it did not bear the burden of proof) that L.M. was offered and provided a free appropriate public education in the least restrictive environment throughout his time at Rolesville Middle School, that he made substantial progress with respect to his IEP goals and unique educational needs, and that the

13

Case 5:23-cv-00716-D-KS   Document 1   Filed 12/13/23   Page 13 of 15

parents inappropriately rejected the January 19, 2023, IEP and February 6, 2023, BIP before withdrawing L.M. from the Wake County Public School System.

57. The ALJ's decision on the determinative issues in the case related to the computation of compensatory education services are incorrect and should be overturned.

58. The decision of the ALJ is attached as Exhibit A.

## VII. PRAYER FOR RELIEF

The Board therefore prays the Court to:

1. Find that L.M.'s parents knew or should have known about the violations they complained of in their Petition for a Contested Case Hearing no later than October 28, 2021; that the one-year statute of limitations should have been applied strictly to all issues in this case; and, therefore, any and all claims preceding November 11, 2021 were not timely brought, should not have been before the ALJ, and any remedies related thereto should be overturned;

2. Find that the IEPs and BIPs developed within the statutory period offered L.M. a FAPE and were properly implemented to provide a FAPE;

3. Find that the order for 402 hours and 30 minutes of compensatory services for academic recovery, social-emotional/behavioral skills instruction, counseling, and parent training constitutes an error of law as an award outside what the law provides for, and is otherwise unsupported by the evidence in the record;

4. Declare the Board the prevailing party on all issues.

This the 13th day of December 2023.

/s/ Stephen G. Rawson
Stephen G. Rawson
N.C. State Bar No. 41542
Kimberly R. Davis
N.C. State Bar No. 59034
150 Fayetteville Street, Suite 1900
Post Office Box 1151
Raleigh, North Carolina 27602-1151
Telephone: (919) 821-4711
Fax: (919) 829-1583
Email: srawson@tharringtonsmith.com
Email: kdavis@tharringtonsmith.com
ATTORNEYS FOR PLAINTIFF